# United States Navy–Marine Corps Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

———————————————

**UNITED STATES**
*Appellee*

**v.**

**Damien H. BAISDEN**
Chief Personnel Specialist (E-7), U.S. Navy
*Appellant*

**No. 202500056**

———————————————

Decided: 30 July 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Frankie D. Hutchison

Sentence adjudged 16 December 2024 by a special court-martial tried at Naval Station Norfolk, Virginia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for five months, and a bad-conduct discharge.[1]

For Appellant:
*Lieutenant Commander Alaric A. Piette, JAGC, USN*

For Appellee:
*Lieutenant Erin Bourneuf, JAGC, USN*
*Captain Jacob Carmin, USMC*

---

[1] Appellant was credited with 210 days of pretrial confinement credit.

Judge GANNON delivered the opinion of the Court, in which Senior Judge KISOR and Judge FLINTOFT joined.

———————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

GANNON, Judge:

Appellant was convicted, consistent with his pleas, of one specification of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ).[2]

Appellant asserts four assignments of error (AOEs):

**I. Whether Appellant's trial defense counsel was ineffective for failing to advise Appellant that the sentence Appellant agreed to in the plea agreement would result in automatic reduction in rank?**

**II. Whether Appellant's plea was improvident due to a misunderstanding of a material term of the plea agreement?[3]**

**III. Whether the military judge erred by failing to dismiss Appellant's case due to unlawful command influence where Appellant's Commanding Officer unlawfully influenced the convening authority?[4]**

———————————

[2] 10 U.S.C. § 912a.

[3] Having carefully considered this assignment of error we find that it does not warrant discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

[4] Appellant's plea agreement of 4 December 2024 contains a "waive all waivable" motions provision. App. Ex. I at 5. Appellant waived this issue. *See United States v. Suarez*, 86 M.J. 65, 71 (C.A.A.F. 2025). Having carefully considered this assignment of error in light of the plea agreement's motions waiver provision, we find that it does not warrant discussion or relief. *See Matias*, 25 M.J. at 361.

**IV. Whether the military judge erred by failing to exclude evidence of Appellant's urinalysis result the Government introduced in violation of Government regulations?[5]**

We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

This is Appellant's second court-martial. On 16 August 2023, Appellant pleaded guilty at a special court-martial to violating Article 112a, UCMJ, for wrongful use of cocaine. He was sentenced to 142 days of confinement. On 28 February 2024, after Appellant's first court-martial, while Appellant was being processed for administrative separation, Appellant's unit (Helicopter Mine Countermeasures Squadron 15, (HELMINERON 15)) conducted a random urinalysis. Appellant, along with several other members of the command, provided urine samples. All the urine samples taken during the urinalysis were stored in a locked room within the unit spaces.

On the morning of 29 February 2024, the unit's Assistant Urinalysis Program Coordinator (AUPC) entered the locked room where the urine samples were stored to prepare them to be shipped to the Naval Drug Screening Laboratory. Upon entering the room, the AUPC discovered ceiling tiles on the floor and a hole in the ceiling, as well as several other indicia that someone had entered the room during the night through the ceiling. The AUPC also discovered that a single urine sample was tampered with; it had been removed from a sealed bag, the lid loosened, and the label damaged. The sample that had been tampered with was Appellant's. All personnel who had provided urine samples on 28 February 2024 were retested on 29 February 2024. Appellant's urine sample tested positive for cocaine. On or about 1 March 2024, Appellant absented himself without authorization from HELMINERON 15.

After an investigation, Appellant was charged with desertion, damaging military property, wrongful use of cocaine, unlawful entry, and preventing the authorized seizure of property. On 21 August 2024, the above charges were referred to a general court-martial.

---

[5] On 9 October 2025, this Court denied Appellant's Mot. to Attach App'x L, (a 6 December 2024 military judge's ruling on a Defense Motion to Suppress results from a urinalysis test in a prior court-martial unrelated to this case). We subsequently denied Appellant's Motion for Reconsideration on 21 November 2025. This AOE wholly rests on matters not in the Record of Trial. Appellate courts may not consider evidence submitted for the first time on appeal, because such evidence is "outside the 'entire record.'" *United States v. Jessie*, 79 M.J. 437, 445 (C.A.A.F. 2020). We see no need to further analyze this issue. *See Matias*, 25 M.J. at 361.

On 4 December 2024, Appellant entered into a plea agreement with the convening authority. In it, Appellant agreed to plead guilty to a single specification in violation of Article 112a, UCMJ. Appellant also agreed to waive all waivable motions. In exchange, the convening authority agreed to withdraw and dismiss all the charges except the Article 112a, UCMJ, charge and to refer that charge to a special court-martial. Appellant's sentence exposure resulting from the plea agreement included the possibility of a bad-conduct discharge, a mandatory five-month period of confinement, and protection from the following: adjudged reduction, forfeiture of pay, a fine, and any other lawful punishment. The military judge sentenced Appellant to a bad-conduct discharge and confinement for a period of five months.

## II. DISCUSSION

**Appellant's Trial Defense Counsel Was Not Ineffective.**

Appellant argues that his trial defense counsel was ineffective because he failed to advise Appellant that despite the plea agreement provision protecting Appellant from any *adjudged* reduction in grade, he would automatically be reduced to the lowest enlisted grade as a result of the mandatory five-month period of confinement.[6] Having reviewed the entire record, to include his post-trial declaration of 10 September 2025, we find that Appellant has failed to demonstrate that his trial defense counsel was ineffective.

### 1. Applicable Law

Appellate courts review claims of ineffective assistance of counsel de novo.[7] When evaluating claims of ineffective assistance of counsel, this Court applies the framework from *Strickland v. Washington*.[8] Under *Strickland*, an appellant bears the burden of demonstrating that (a) defense counsel's performance was deficient, and (b) this deficient performance was prejudicial to the appellant.[9]

Ineffective assistance of counsel claims can be resolved on either prong.[10] With respect to the first prong—whether counsel's performance was deficient— courts "must indulge a strong presumption that counsel's conduct falls within

---

[6] Article 58a, UCMJ, 10 U.S.C. § 858a; Rule for Courts-Martial 1102(b)(6)(B).

[7] *United States v. Carter*, 79 M.J. 478, 480 (C.A.A.F. 2020) (quoting *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012)).

[8] 466 U.S. 668 (1984).

[9] *See Id.* at 687.

[10] *Id.* at 697.

the wide range of reasonable professional assistance."[11] "The *Strickland* test applies in the context of guilty pleas where an appellant challenges the plea based on ineffective assistance of counsel."[12]

"When an [appellant] alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."[13] Instead, the prejudice test for ineffective assistance of counsel in the guilty plea context is an objective test: whether there is a reasonable probability that, but for counsel's errors, an appellant would have pleaded not guilty.[14]

Further, standing alone, an appellant's post-trial assertions that he would not have pleaded guilty but for his attorney's deficiencies are not enough to establish prejudice. This Court must also look to contemporaneous evidence because an appellant has an incentive to assert that the result of the plea process would have been different.[15]

2. Analysis

    a. Trial defense counsel's performance was not deficient.

Appellant started this particular journey through the military justice system with an existing special court-martial conviction for violating Article 112a, UCMJ, and with referred general court-martial charges alleging desertion, destruction of military property, wrongful use of cocaine, unlawful entry and the prevention of authorized seizure of property. The Government's evidence was strong, and the punitive landscape severe.[16] Despite this, Appellant's trial defense counsel successfully negotiated a plea agreement that reduced the forum from a general court-martial to a special court-martial; eliminated multiple serious charges; gave the military judge discretion to adjudge a bad-conduct discharge and limited confinement to five months. Given the severity of Appellant's legal troubles at the time of his second court-martial, the plea agreement negotiated by defense counsel was extremely favorable to Appellant.

---

[11] *Id.* at 689.

[12] *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

[13] *Suarez*, 86 M.J. at 73 (quoting *Lee v. United States*, 582 U.S. 357, 364 (2017)).

[14] *See United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (quoting *Lee*, 582 U.S. at 363)).

[15] *See Suarez*, 86 M.J. at 73 (citation omitted).

[16] App. Ex. III.

We pair the zealous advocacy demonstrated by defense counsel in securing such a favorable plea agreement with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and conclude that Appellant has failed to demonstrate that defense counsel's performance was deficient.[17] We arrive at this conclusion despite Appellant's post-trial declaration contending that the reduction in grade constituted "cruel and unusual punishment" and that his "rank would remain untouched" as a result of the plea agreement provision that prevented the military judge from *adjudging* any reduction in pay grade.[18]

While post-trial affidavits can provide some "affirmative indication" that an appellant did not understand a provision of a plea agreement, the surrounding circumstances convince us that Appellant was properly advised of the nature and scope of automatic reduction. Here, the military judge ensured that Appellant had read and understood his post-trial appellate rights. Specifically, the appellate and post-trial rights form included a section discussing automatic reduction in pay grade.[19] The form included a provision explaining "Automatic Reduction in Pay Grade,"

> . . . forfeitures and reduction in rank, whether adjudged *or automatic*, take effect 14 days after the sentence is announced. . . . for any conviction for an offense committed both on or after 1 January 2019 and after the President has delegated authority to the Secretary of the Navy to establish conditions for automatic reductions, *reduction to the lowest enlisted pay grade will be automatically effected* for any sentence that includes: (1) a dishonorable or bad-conduct discharge; or (2) confinement . . . in excess of 3 months if the sentence is awarded in months or years. This automatic reduction in rank goes into effect 14 days after the announcement of sentence.[20]

---

[17] *Strickland*, 466 U.S. at 689.

[18] *Id*. Appellant's Decl. at 1, App'x C, Mot. to Attach (Sep. 10, 2025). We granted in part and denied in part Appellant's Motion to Attach on 9 October 2025.

[19] *Cf. Suarez*, 86 M.J. at 71 (explaining that in the context of whether an appellant's plea agreement waived an unlawful command influence issue on appeal, a post-trial affidavit can provide some affirmative indication that an appellant did not understand a provision of the plea agreement. However, surrounding circumstances, e.g. a colloquy with the military judge, can be considered in determining whether the waiver was knowing and voluntary).

[20] App. Ex. IV at 6-7 (emphasis added).

Appellant confirmed with the military judge that his defense counsel had explained the form to him, that Appellant had signed the form and did not have further questions regarding the matter.[21]

The military judge engaged in the following colloquy with Appellant:

> MJ:  Defense counsel, have you advised Chief Baisden orally and in writing of his post-trial and appellate rights, including the rights contained in [Rules for Courts-Martial (R.C.M.)] 1010?
>
> DC: Yes, Your Honor.
>
> MJ: Does he have a copy in front of him?
>
> DC: One moment Your Honor. He has it now, Your Honor.
>
> MJ: Okay. Chief, I've got Appellate Exhibit IV, an appellate rights form. Is that your signature on the form?
>
> ACC: Yes, Your Honor.
>
> MJ: And, defense counsel, is that your signature as well?  Is that your signature as well on the – on the form?
>
> DC: Yes, Your Honor.
>
> MJ: Okay.  Chief, has your defense counsel explained to you the post-trial and appellate rights you have?
>
> ACC: Yes, Your Honor.
>
> MJ: Do you have any questions about those post-trial and appellate rights?
>
> ACC: No, Your Honor.[22]

As a result of this colloquy, we are convinced that Appellate was in fact briefed on the nature and operation of automatic reduction in grade. Given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," we conclude that Appellant's trial defense counsel performance was not deficient.

> b. Appellant cannot demonstrate prejudice.

Appellant argues that he was prejudiced by his trial defense counsel's deficient performance. Specifically, Appellant's post-trial declaration avows that

---

[21] R. at 91-92.

[22] R. at 91-92.

he would not have pleaded guilty but for his counsel's deficient advice.[23] However, "[s]tanding alone, an appellant's *post hoc* assertions . . . about how he would have pleaded but for his attorney's deficiencies are not enough to establish prejudice."[24] We must also look to contemporaneous evidence to substantiate an appellant's expressed preferences, because "the appellant has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true."[25]

When we look to contemporaneous evidence to substantiate an appellant's expressed preferences, we need look no further than Appellant's own words expressing those preferences. We note that Appellant expressed his desired adjudicative outcome preferences to his command master chief via text message while in an unauthorized absence status.[26] In those text messages, made much closer in time to his pleas than his *post hoc* declaration, Appellant is focused on the following: arranging a time and manner of surrendering to law enforcement to terminate his unauthorized absence; avoiding the embarrassment of being arrested in front of junior Sailors; avoiding confinement; and pleading for an administrative resolution of his case. There is no evidence that "grade reduction protection" was the "determinative issue"[27] or "key concern"[28] for Appellant. Rather, his communications with his command reveal that his primary interest was prompt resolution of the pending criminal matter.[29] We view these contemporaneous communications by Appellant as strong evidence that he was focused on a rapid resolution of his legal dilemma and inclined to enter into a plea agreement with the convening authority. Thus, we reject Appellant's *post hoc* assertion that he would have gone to a contested general

---

[23] App'x C, Mot. to Attach (Sep. 10, 2025).

[24] *Furth*, 81 M.J. at 117 (quoting *Lee*, 582 U.S. at 368-69)).

[25] *Id.* (quoting *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019)).

[26] Pros. Ex. 5 at 26-27.

[27] *Lee*, 582 U.S. at 367.

[28] *Rose*, 71 M.J. at 143.

[29] "'Surmounting *Strickland*'s high bar is never an easy task,' *Padilla* v. *Kentucky*, 559 U. S. 356, 371 (2010), and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.' *United States* v. *Timmreck*, 441 U. S. 780, 784 (1979). Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 562 U.S. at 368-69.

court-martial and conclude that he has failed to meet his burden to demonstrate prejudice.

Finally, even assuming arguendo that Appellant's trial defense counsel failed to properly explain the nature and operation of automatic reduction based on the period of confinement, we find that Appellant suffered no prejudice given the extremely favorable resolution defense counsel was able to facilitate in Appellant's case. As noted above, Appellant's defense counsel successfully negotiated a plea agreement that reduced the forum from a general court-martial to a special court-martial; eliminated multiple serious charges, gave the military judge discretion to adjudge a bad-conduct discharge and limited confinement to five months. Appellant benefited from the generous terms of the plea agreement despite having a prior court-martial conviction for violating Article 112a, UCMJ. Given the favorable terms of the plea agreement, we discern no reasonable probability that Appellant would have rejected the plea agreement and insisted on contesting his case at a general court-martial.[30] Accordingly, Appellant is unable to meet his burden of establishing ineffective assistance of counsel.

---

[30] We also note that Appellant negotiated for and knew that the military judge was authorized to award a bad-conduct discharge. The imposition of the bad-conduct discharge was an independent and separate basis for which Appellant was reduced automatically to pay grade E-1. He was informed of that fact in his appellate and post-trial rights form and confirmed that understanding through the colloquy with the military judge. App. Ex. IV at 6-7; R. at 91-92. Thus, Appellant knew he could receive a bad-conduct discharge, and he did. *See* Rule for Courts-Martial 1102(b)(6)(B); Dep't. of the Navy, Judge Advocate General Instr. 5800.7G CH-2, Manual of the Judge Advocate General, para. 0154e(1)(a) (Dec. 1, 2023).

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[31]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[31] Articles 59 & 66, UCMJ.